UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT CUELLAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-20-CV-792-HJB |
| | § | |
| GEO GROUP, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order concerns Defendant GEO Group's ("GEO") Motion for Summary Judgment (Docket Entry 20) and Motion to Strike (Docket Entry 26). The parties have consented to my jurisdiction. For the reasons set out below, Defendant's Motion for Summary Judgment (Docket Entry 20) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. Defendant's Motion to Strike (Docket Entry 26) is **DENIED AS MOOT**.

## I.    Jurisdiction.

The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. (*See* Docket Entry 1, at 2.) I have authority to issue this order by consent of the parties pursuant to 28 U.S.C. § 636(c). (*See* Docket Entries 4 & 5.)

## II.    Background.

This is an employment discrimination case arising out of Plaintiff's termination by Defendant GEO, a private prison company. Plaintiff began employment with GEO in November 2009, as a Detention Officer. (Docket Entry 22-4, at 7.) One of the requirements for Plaintiff's job was to "work overtime as required," including "up to sixteen (16) hours within rolling a 24 hour period." (Docket Entry 20-13, at 1–2.)

In 2013, Plaintiff began to experience symptoms of disordered sleeping and submitted to a sleep study with Gilbert M. Ruiz, M.D. (Docket Entry 22-1, at 11.) Dr. Ruiz diagnosed Plaintiff with sleep apnea. (*Id.*) As a result of his sleep apnea, Plaintiff experienced a myriad of symptoms, including "daytime sleepiness, insomnia, nightmares, sleep deprivation . . . . fatigue, [and] headache." (Docket Entry 22-6, at 3.) In 2015, Plaintiff identified himself as having a disability on a "Voluntary Self-Identification of Disability" form that was submitted to GEO. (Docket Entry 22-2, at 12.) In 2018, Plaintiff twice fell asleep at the wheel of his vehicle after working a 16-hour shift, once resulting in a collision and once veering into oncoming traffic. (Docket Entry 22-7, at 3–4.)

On May 15, 2018, Plaintiff presented a note from Richard Rowland, M.D., to his supervisor and to GEO's Human Resources Manager, Glenda Klein. (Docket Entry 20-6, at 1.) The note informed them that, as a result of his disability, Plaintiff was medically restricted from working a shift longer than 12 hours; Plaintiff sought a work-schedule accommodation due to this restriction. (*Id.*) On May 23, 2018, Plaintiff was placed on administrative leave without pay by the Facilities Administrator Ray Castro and Human Resources Manager Klein while GEO sought clarification from Dr. Rowland as to Plaintiff's disability and work limitations. (Docket Entry 20-7, at 2.) On June 4, 2018, after obtaining more information from Dr. Rowland, GEO terminated Plaintiff's employment on the basis that he "would not meet the qualifications for [the position of] Detention Officer." (Docket Entry 20-4, at 21.)

Plaintiff originally filed suit in state court on June 4, 2020, alleging violations of Chapter 21 of the Texas Labor Code. (Docket Entry 1-4.) GEO subsequently removed to this Court on July 8, 2020, asserting diversity jurisdiction. (Docket Entry 1, at 2.) GEO filed a motion for summary judgment on all pending claims (Docket Entry 20), to which Plaintiff responded (Docket

2

Entry 22). Defendant replied (Docket Entry 25), and simultaneously moved to strike large portions of Plaintiff's evidence (Docket Entry 26), to which Plaintiff responded (Docket Entry 31).

### III.    Summary Judgment.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the record shows no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party against whom summary judgment is sought may not rest on the allegations or denials in his pleadings, but instead must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). "Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' to create a genuine issue of material fact sufficient to survive summary judgment." *Barrera v. MTC, Inc.*, No. SA-10-CV-665-XR, 2012

WL 1202296, at *2 (W.D. Tex. Apr. 10, 2012) (quoting *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).

GEO has moved for summary judgment on Plaintiff's claims for disability discrimination and retaliation. (Docket Entry 20.) Each issue will be addressed below.

### A.    *Plaintiff's Disability Discrimination Claim.*

Chapter 21 of the Texas Labor Code makes it unlawful if an employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual" on the basis of disability status. TEX. LABOR CODE ANN. § 21.051 (West) (1993). Given that the Texas Labor Code mirrors the Americans with Disabilities Act ("ADA"), Courts use the same framework to evaluate both. *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006). The ADA prohibits employers from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a).

Because Plaintiff does not assert direct evidence of discrimination, his claims are subject to evaluation based on the *McDonnel Douglass* burden shifting framework. *Carbaugh v. Unisoft Intern., Inc.*, No. H-10-0670, 2011 WL 5553724, at *3 (S. D. Tex. Nov.15, 2011) (*citing McDonnell Douglas v. Green*, 411 U.S. 792 (1973)). To make out a *prima facie* case of disability discrimination under this framework, Plaintiff must create a factual issue as to whether (1) he is disabled within the meaning of the ADA, (2) he is qualified and able to perform the essential functions of his job, and (3) his employer fired him because of his disability. *See Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). "If the plaintiff makes a *prima facie* showing of disability-based discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the

4

articulated reason was merely a pretext for unlawful discrimination." *Carbaugh*, 2011 WL 5553724, at \*3 (internal citations and quotation marks omitted).

       1.    *Whether Plaintiff has a Disability.*

Plaintiff argues that he has presented evidence that raises a genuine fact issue as to whether he is disabled under the meaning of the ADA. (Docket Entry 22, at 12–16.) The Court agrees.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A). "Substantial limitations" are those which render a person "unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009) (*citing* 29 C.F.R. § 1630.2(j)).

Plaintiff asserts that his disability is sleep apnea, which substantially limits his major life activities of "sleeping. . . . [t]hinking, concentrating, and interacting with others." (Docket Entry 22, at 13.) The Fifth Circuit has held that sleep qualifies as a major life activity. *See Chevron Phillips*, 570 F.3d at 616 ("Every circuit that has addressed the issue has concluded that sleeping is a major life activity."). Merely having an impairment affecting a major life activity, however, is not enough to qualify as a disability. *Id.* at 614. The issue therefore is whether Plaintiff has provided evidence that his sleep apnea substantially limits his ability to sleep.

GEO cites to various cases in which sleep apnea was not found to be a disability; in those cases, plaintiffs had provided little evidence beyond mere tiredness while at work or difficulty

5

waking and arriving to work on time. *See, e.g., Troutman v. Williamson Cty.*, No. 1:14-CV-986-DAE, 2016 WL 1257989, at *4 (W. D. Tex. Mar. 30, 2016) (collecting cases).  By contrast, in this case Plaintiff has submitted testimony that, on two separate occasions, he was so sleep deprived after working a 16-hours shift that he drifted in and out of sleep while driving a vehicle, once crashing into a tree and once veering into oncoming traffic. (Docket Entry 22-7, at 3–4.)  Plaintiff attributes these incidents to consequences of his sleep apnea causing tiredness after working 16-hour shifts.  (*Id.*)  From this evidence, it is reasonable to infer that Plaintiff's sleep apnea substantially limits his ability to sleep, a major life activity. *See Chevron Phillips*, 570 F.3d at 617 (evidence that included falling asleep while driving sufficient to survive summary judgment). Drawing all inferences in favor of the non-moving party, Plaintiff has raised a fact issue as to whether he was disabled under the meaning of the ADA.

### 2.    *Whether Plaintiff was Qualified for the Job.*

The second element of Plaintiff's *prima facie* case is whether he was qualified for the position he held.  A plaintiff can show that he was qualified for his job by demonstrating either that he (1) "could 'perform the essential functions of the job in spite of [his] disability,' or, if [he] could not, (2) that 'a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job.'" *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)).  An individual is not qualified for a job if there is a genuine, substantial risk that he could injure himself or others, and the job cannot be modified to eliminate the risk. *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 996 (W.D. Tex. 2012).

"A function is 'essential' if it bears 'more than a marginal relationship to the employee's job.'" *LHC Grp., Inc.*, 773 F.3d at 697 (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393

(5th Cir. 1993)). When considering whether an activity is an essential function of a job, other courts in this circuit have considered a number of factors, including but not limited to (1) the employer's judgment, (2) any written job description (3) the time spent performing the activity in question, and (4) the consequences of the employee not performing the activity. *Gonzalez v. Texas Health & Hum. Servs. Comm'n*, No. 5:13-CV-183-DAE, 2014 WL 6606629, at *9 (W.D. Tex. Nov. 19, 2014) (*citing Molina*, 840 F. Supp. 2d at 996.)

GEO contends that Plaintiff is not qualified for the position of detention officer because overtime, specifically working 16 hours in a rolling 24-hour period, is an essential function. (Docket Entry 20, at 7–12.) In support of its position, GEO has submitted the written description for Plaintiff's position, which mandates the "[a]bility to work overtime as required," specifically the "[a]bility to work up to sixteen (16) hours within rolling a 24 hour period." (Docket Entry 20-13, at 1–2.) Plaintiff does not dispute the description; to the contrary he acknowledged that 16-hour shifts were the norm among detention officers, with others in the position working such shifts "three to four times a month." (Docket Entry 20-10, at 1.)

GEO also relies on the consequences of failing to perform the overtime job function, citing to its procedure manual, which details mandatory positions that may unexpectedly need to be filled due to "sick time, 'no-shows,' or other factors." (Docket Entry 20-4, at 15.) The Court infers from the manual that, if Plaintiff could not complete this required overtime, then, in order to fill mandatory positions, another employee will be required to do so. Plaintiff provides no legitimate basis to dispute this inference. Together with the job description, this his evidence therefore establishes overtime as an essential function of the job. *See Gonzalez*, 2014 WL 6606629, at *10 (overtime was essential function when all workers worked overtime, plaintiff had previously been

7

expected to work overtime, and employees were advised during application process that overtime was requirement).

In response, Plaintiff appears to challenge the essential nature of overtime work—particularly the 16-hour shift. He alleges that other workers in the same position were given accommodations limiting overtime work, pointing out that some pregnant employees, and employees with knee or back injuries, were temporarily limited to 12-hour shifts. (Docket Entry 22-2, at 27.) As GEO responds, however, the evidence indicates that these accommodations were all *temporary*; as discussed in the next paragraph, Plaintiff sought a *permanent* accommodation. That other employees were given temporary accommodations does not change the essential nature of overtime for the job overall. *Gonzalez v. Texas Health & Hum. Servs. Comm'n*, , 2014 WL 6606629, at *10 (W. D. Tex. Nov. 19, 2014). In sum, occasional 16-hour shifts are an essential function of the position of detention officer, and Plaintiff by his own admission cannot perform this function.

If an employee cannot perform an essential job function without accommodation, the Court must next consider whether he can do so with a reasonable accommodation. *LHC Group*, 773 F.3d at 697. In this case, it appears that Plaintiff's only requested accommodation was to be permanently restricted to 12-hour shifts. (Docket Entry 20-10, at 1; Docket Entry 22-2, at 1.) As discussed above, this would not be a reasonable accommodation; it would fundamentally alter an essential job function. *Burch v. City of Nacogdoches*, 174 F.3d 615, 620–21 (5th Cir. 1999) (modifying job duties was not reasonable accommodation when it would remove essential function, modify such function, or reassigns others to cover such function). For all these reasons, there is no genuine dispute that Plaintiff was not qualified for the position of detention officer.

Plaintiff has failed to establish the second element of his *prima facie* case, and GEO is therefore entitled to summary judgment as to Plaintiff's disability discrimination claim.

**B.      *Plaintiff's Retaliation Claim.***

GEO also seek summary on Plaintiff's retaliation claim under Chapter 21 of the Texas Labor Code.  To establish a *prima facie* case of retaliation, a plaintiff must show "(1) that he is engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *see also Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170 (5th Cir. 2014).

Plaintiff alleges only one instance of protected activity: requesting an accommodation. (Docket Entry 22, at 23.)  As applied to such circumstances, Texas Law is narrower in scope than federal law regarding what constitutes a protected activity.  The ADA has two provisions for retaliation: the first prohibits retaliation based on an individual's opposition to a discriminatory practice; the second prohibits retaliation based on exercise or enjoyment of any right protected by the ADA. *See* 42 U.S.C. § 12203(a), (b); *Tabatchnik v. Cont'l Airlines*, 262 F. App'x. 674, 676 (5th Cir. 2008).  On the other hand, an employer violates the Texas Labor Code only if it "retaliates against a person who (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE. ANN. § 21.055. (West) (1993).

Making a request for reasonable accommodations is undisputedly a protected activity under the ADA. *Tabatchnik*, 262 F. App'x at 676.  The Texas Labor Code, however, lacks a provision banning retaliation for attempting to enjoy the right to reasonable accommodation the way the ADA does.  As the Texas Supreme Court has recently clarified, absent unusual circumstances,

merely, requesting an accommodation, without an additional allegation of discrimination, is not a protected activity under the Texas Labor Code. *See Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58–61 (Tex. 2021) (request for accommodations must alert employer to plaintiff's belief that disability discrimination is at issue). In this case, there is no evidence that Plaintiff's request alerted GEO to any issue of discrimination, and there are no unusual circumstances that would make the mere request for accommodation a "protected activity" under the Code. *Cf. id.* at 59 ("[W]e assume that an accommodation request could, in some circumstances, count as opposition to a discriminatory practice."); *see, e.g., Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997) (finding it "anomalous" for § 12203(a) of the ADA to "leave employees unprotected if an employer granted the accommodation and shortly thereafter terminated the employee in retaliation"). Because Plaintiff has not presented evidence of protected activity under Texas law, summary judgment must be granted as to his retaliation claim.

## IV.    GEO's Motion to Strike.

GEO has moved to strike large portions of the summary judgment evidence submitted by Plaintiff on various grounds. (Docket Entry 26.) Under Rule 56, the Court may consider only material that can "be presented in a form that would be admissible in evidence" at trial. FED. R. CIV. P. 56(c)(2). In this case, however, consideration of the challenged evidence would not affect the Court's ruling on summary judgment. Accordingly, the motion will be denied as moot.

## V.    Conclusion.

Based on the foregoing, Defendant's Motion for Summary Judgment (Docket Entry 20) is **GRANTED**, and Plaintiff's case is **DISMISSED WITH PREJUDICE**. Defendant's Motion to Strike (Docket Entry 26) is **DENIED AS MOOT**.

10

SIGNED on January 28, 2022.

_____
Henry J. Bemporad
United States Magistrate Judge